**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EASTER S. MCLEOD,

<div style="margin-left:2em"></div>Plaintiff,

-against-

JEWISH GUILD FOR THE BLIND,

<div style="margin-left:2em"></div>Defendant.

Case No.: 13 Civ. 6746 (GHW)

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Jennifer B. Courtian
Ravindra K. Shaw

ATTORNEYS FOR DEFENDANT

## TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

LEGAL STANDARD UNDER FED. R. CIV. P. 56................................................ 6

ARGUMENT...................................................................................................... 7

    POINT I .................................................................................................... 7

        PLAINTIFF'S SEX DISCRIMINATION CLAIM SHOULD BE DISMISSED
        BECAUSE PLAINTIFF HAS ABANDONED THE CLAIM AND SHE DID NOT
        SUFFER AN ADVERSE ACTION BASED ON HER SEX. ............................7

    POINT II .................................................................................................. 10

        PLAINTIFF'S CLAIM THAT SHE WAS SUBJECTED TO A HOSTILE WORK
        ENVIRONMENT BASED ON HER SEX SHOULD BE DISMISSED AS A
        MATTER OF LAW..................................................................................10

        A. Plaintiff's Hostile Work Environment Claim Is Time-Barred Because None of
           the Alleged Conduct Occurred Within the Limitations Period.............................10

        B. The Alleged Conduct About Which Plaintiff Complains Was Not Sufficiently
           Severe or Pervasive to Establish a Hostile Work Environment............................12

        C. Even If The Conduct About Which Plaintiff Complains Was Actionable,
           Plaintiff's Hostile Work Environment Claim Should Be Dismissed Because
           There Is No Basis To Impute Liability To Defendant. .........................................17

CONCLUSION.................................................................................................... 21

i

## TABLE OF AUTHORITIES

**Page No.**

CASES

Brennan v. Metropolitan Opera Ass'n,
    192 F.3d 310 (2d Cir. 1999)........................................................13

Brown v. Henderson,
    257 F.3d 246 (2d Cir. 2001)....................................................8, 13

Burlington Industries, Inc. v. Ellerth,
    524 U.S. 742 (1998).............................................................17, 18

Byrnie v. Town of Cromwell Bd. of Educ.,
    243 F.3d 93 (2d Cir. 2001)........................................................10

Cameron v. Cmty. Aid for Retarded Children, Inc.,
    335 F.3d 60 (2d Cir. 2003).........................................................7

Caridad v. Metro-North Commuter R.R.,
    191 F.3d 283 (2d Cir. 1999)......................................................20

Carlton v. Mystic Transp., Inc.,
    202 F.3d 129 (2d Cir. 2000).......................................................9

Clark Cnty. Sch. Dist. v. Breeden,
    532 U.S. 268 (2001)...............................................................14

Cristofaro v. Lake Shore Cent. Sch. Dist..,
    473 Fed. Appx. 28 (2d Cir. 2012).............................................15, 16

Cruz v. Coach Stores, Inc.,
    202 F.3d 560 (2d Cir. 2000)......................................................13

Fall v. New York State United Teachers,
    289 Fed.Appx. 419 (2d Cir. 2008)..................................................7

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998).............................................................13, 17

Feingold v. New York,
    366 F.3d 138 (2d Cir. 2004)........................................................6

Ferraro v. Kellwood Co.,
    440 F.3d 96 (2d Cir. 2006)........................................................18

First Nat'l Bank of Ariz. v. Cities Serv. Co.,
    391 U.S. 253 (1968)....................................................................................6

Galabya v. N.Y.C. Bd. of Educ.,
    202 F.3d 636 (2d Cir. 2000)........................................................................7

Garone v. UPS, Inc.,
    436 F. Supp. 2d 448 (E.D.N.Y. 2006), aff'd sub nom,
    Sardina v. UPS, 254 Fed. Appx. 108 (2d Cir. 2007) ...........................16

Godineaux v. Laguardia Airport Marriott Hotel,
    460 F. Supp. 2d 413 (E.D.N.Y. 2006) ...................................................16

Harris v. Forklift Sys., Inc.,
    510 U.S. 17 (1993)....................................................................................13

Howley v. Town of Stratford,
    217 F.3d 141 (2d Cir. 2000)........................................................................8

La Grande v. DeCrescente Distrib. Co.,
    370 F. App'x 206 (2d Cir. 2010)..................................................................8

Leibovitz v. N.Y. City Transit Auth.,
    252 F.3d 179 (2d Cir. 2001)......................................................................12

Leopold v. Baccarat, Inc.,
    239 F.3d 243 (2d Cir. 2001)......................................................................18

Lu v. Chase Inv. Serv. Corp.,
    412 Fed. App'x 413 (2d Cir. Mar. 8, 2011) ...............................................6

Mack v. Otis Elevator Co.,
    326 F.3d 116 (2d Cir. 2003)......................................................................18

Mattera v. JPMorgan Chase Corp.,
    740 F. Supp. 2d 561 (S.D.N.Y. 2010)......................................................10

McDonnell-Douglas Corp. v. Green,
    411 U.S. 792 (1973)....................................................................................7

McGullam v. Cedar Graphics, Inc.,
    609 F.3d 70 (2d Cir. 2010)........................................................................11

National Railroad Passenger Corporation v. Morgan,
    536 U.S. 101 (2002)..................................................................................11

Niagara Mohawk Power Corp. v. Jones Chem., Inc.,
    315 F.3d 171 (2d Cir. 2003)........................................................................6

O'Dell v. Trans World Entm't Corp.,
    153 F. Supp. 2d 378 (S.D.N.Y. 2001), aff'd, 40 Fed. Appx. 628 (2d Cir. 2002) ........17, 18, 20

Oncale v. Sundowner Offshore Servs., Inc.,
    523 U.S. 75 (1998)........................................................................................................15

Perry v. Ethan Allen, Inc.,
    115 F.3d 143 (2d Cir. 1997)....................................................................................12, 13

Quinn v. Green Tree Credit Corp.,
    159 F.3d 759 (2d Cir. 1998)...........................................................................................16

Redd v. N.Y. State Div. of Parole,
    678 F.3d 166 (2d Cir. 2012)....................................................................................14, 15

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003)...........................................................................................7, 8

Texas Department of Community Affairs v. Burdine,
    450 U.S. 248 (1981)..........................................................................................................8

Townsend v. Benjamin Enterprises, Inc.,
    679 F.3d 41 (2d Cir. 2012)............................................................................................18

Twin Labs., Inc. v. Weider Health & Fitness,
    900 F.2d 566 (2d Cir. 1990)............................................................................................6

Valentine v. Standard & Poor's,
    50 F.Supp.2d 262 (S.D.N.Y. 1999) ..............................................................................10

Vivenzio v. City of Syracuse,
    611 F.3d 98 (2d Cir. 2010)..............................................................................................7

Wahlstrom v. Metro-North Commuter R. Co.,
    89 F. Supp. 2d 506 (S.D.N.Y. 2000)............................................................................19

## STATUTES

42 U.S.C. § 2000e-5(e)(1)...............................................................................................10

## **PRELIMINARY STATEMENT**

Defendant LGI Services, LLC, formerly known as The Jewish Guild for the Blind ("JGB" or "Defendant"), respectfully submits this memorandum of law in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff, Easter McLeod, has served as a Program Aide for JGB since February 2000. In April 2013, for the first time, Plaintiff reported to her employer that she believed she had been subjected to sexual harassment by her supervisor for some eight (8) years. JGB promptly investigated Plaintiff's allegations by interviewing all relevant witnesses and informed Plaintiff that it was unable to substantiate her claims of improper treatment. Plaintiff admits that after Defendant investigated her complaint, she experienced no further harassment. Plaintiff remains employed by Defendant to date.

In this action, Plaintiff asserts two claims for sex discrimination and hostile work environment based on her sex under Title VII of the Civil Rights Act of 1964 ("Title VII").[1]

Plaintiff's sex discrimination claim should be dismissed because at her deposition Plaintiff conceded that she is not pursuing this claim. Even if Plaintiff is pursuing this claim, however, it should be dismissed because Plaintiff cannot establish that JGB took any materially adverse action against her or that any actions were directed at Plaintiff based on her sex.

Plaintiff's sex harassment claim should be dismissed based on three grounds. First, Plaintiff's claim is time-barred because she alleges only five instances of harassing conduct that are arguably sex-related, all of which occurred between 2005 and 2011 and are well outside the 300-day limitations period that began on August 9, 2012. Second, the allegedly harassing conduct is not sufficiently severe or pervasive to establish that a hostile work environment

---

[1] In its Memorandum and Order dated August 28 2014, the Court granted JGB's motion for partial judgment on the pleadings and dismissed Plaintiff's claims for retaliation and discrimination based on color, disability and age. (See ECF Docket No. 46).

1

existed.  Third, JGB can avail itself of the Faragher-Ellerth affirmative defense to any liability on Plaintiff's claim that she experienced a hostile work environment because it took no tangible employment action against Plaintiff (she remains gainfully employed); it exercised reasonable care to prevent and correct any sexually harassing behavior by maintaining an anti-harassment policy and procedures, and promptly investigating and responding to Plaintiff's harassment complaints; and Plaintiff unreasonably failed to take advantage of JGB's avenue for complaints by allowing eight years to elapse before she reported it, and Plaintiff has not articulated a valid reason for such a lengthy delay.

Accordingly, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

## STATEMENT OF FACTS

Pursuant to Local Civil Rule 56.1, the uncontested material facts relevant to this motion are set forth in separately numbered paragraphs in Defendant's Statement of Undisputed Material Facts (hereinafter "SUMF") submitted herewith.  The facts can be summarized as follows.

JGB is a not-for-profit healthcare organization that, among other things, runs a Day Treatment Program for individuals who are blind or visually impaired and have developmental disabilities.  (SUMF ¶ 1).  Plaintiff has been a Program Aide in that Program since February 22, 2000.  (SUM ¶ 2).  Plaintiff's direct supervisor is Donald Dettmer, who is the Program Director.  (SUMF ¶ 5).  Melissa Farber is JGB's Vice President of Human Resources. (SUMF ¶ 6).

As a Program Aide, Plaintiff's job duties and responsibilities included assisting multi-handicapped consumers with care activities at meal times; assisting consumers with busing at arrival and dismissal times; assisting consumers with physical care and personal hygiene;

maintaining order and cleanliness; following agency regulations; reporting problems and consumer distress to Mr. Dettmer or other team members; providing statistical reports; and performing miscellaneous duties assigned by Mr. Dettmer or another supervisor. (SUMF ¶ 7).

Since 2003, Mr. Dettmer has counseled and disciplined Plaintiff multiple times and provided her with written warnings for deficiencies in her job performance, including: excessive absenteeism and tardiness; failing to intervene with consumers in her assigned program room; failing to participate in routine cleaning duties; running a beauty shop group at a time that interfered with programs in her assigned room; submitting inaccurate consumer attendance documentation; failing to properly document consumers' progress and activities; using a microwave for her personal food after she had been directed not to do so; taking a coffee break when she should have been available to assist consumers; failing to document and deliver consumers' treatment plans; taking a consumer on a community inclusion activity out of the facility and returning with a bag of personal groceries; eating outside of her lunch hour instead of being available to assist consumers; and leaving consumers unsupervised for up to 25 minutes in a program room while she went to warm consumer lunches. (SUMF ¶¶ 8-21).

In or about April 2013, Plaintiff submitted three (3) handwritten documents dated March 4, 2013, March 5, 2013, and April 4, 2013 to Ms. Farber which contained various complaints about Mr. Dettmer's alleged workplace conduct. (SUMF ¶ 24).[2] In these documents, Plaintiff complained that Mr. Dettmer engaged in sexual harassment of a verbal nature but did not allege any physical touching or threats of reprisal if she did not submit to his conduct. (SUMF ¶¶ 24, 27). Indeed, Plaintiff admits that Mr. Dettmer never physically threatened her, never asked her on a date, and never touched her in a sexual or suggestive way. (SUMF ¶ 26).

---

[2]    The April 4, 2013 document does not describe any specific instances of harassing conduct. (Farber Decl., Ex. G).

3

The majority of the specific incidents alleged in Plaintiff's March 4, 2013 letter are not related to her sex but merely recite comments and conduct by Mr. Dettmer that Plaintiff found disrespectful, unprofessional or inconsiderate. (SUMF ¶¶ 28-29). None of the alleged conduct described in Plaintiff's March 5, 2013 letter is related to Plaintiff's sex. (SUMF ¶¶ 30-31). The March 4, 2013 letter contains only a handful of specific allegations of comments or conduct by Mr. Dettmer that could be construed as possibly related to Plaintiff's sex:

- Plaintiff alleges that when her sister was visiting her from Oklahoma City, she had changed clothes to attend a party on a boat and Mr. Dettmer made a comment saying let me find out you have another job. (Farber Decl., Ex. E, ¶ 2).

- Plaintiff alleges that when certain consumers were coming off an elevator, she was picking up a bin and Mr. Dettmer asked if she was trying to show him her ass for points. (Id., ¶ 3).

- Plaintiff alleges that when she was getting soup one morning, Mr. Dettmer came down a hallway and said that Easter likes a lot of juice on her sausage. (Id., ¶ 4). The soup contained sausage and a lot of broth. (Pl. Dep. 82).

- Plaintiff alleges that while giving out checks, Mr. Dettmer allegedly asked Plaintiff when she made her money; said that she probably works the whole weekend; asked how much money she makes per night and when was her best night; and noted that she had on her go-go boots. (Farber Decl., Ex. E, ¶ 5).

- Plaintiff alleges when Mr. Dettmer saw Plaintiff wearing cowboy boots, he asked her what horse she was "gonna ride" today. (Id., ¶ 6).

Plaintiff alleges that these incidents occurred at various times between 2005 and 2011. (SUMF ¶¶ 35-40).

On or about June 5, 2013, Plaintiff completed and signed a U.S. Equal Employment Opportunity Commission (EEOC) Intake Questionnaire in which she indicated that the basis for her employment discrimination claim was "Verbal, Mental & Sexual harassment." (SUMF ¶ 32). On June 26, 2013, the EEOC issued both a Charge and a Dismissal and Notice of

Rights, stating that the EEOC "is unable to conclude that the information obtained establishes violations of the statutes." (SUMF ¶¶ 33-34).

JGB maintains an Employee Policy Manual that contains policies that prohibit discrimination and sex harassment and sets forth a procedure for reporting discriminatory or harassing conduct by a supervisor or employee. (SUMF ¶ 44). Both Plaintiff and Mr. Dettmer received copies of the manual and agreed to comply with the policies contained in it. (SUMF ¶¶ 41-43). In addition, Plaintiff is a member of a union whose collective bargaining agreement with JGB prohibits discrimination and harassment and directs employees to report any incidents of sexual harassment to JGB's Vice President of Human Resources. (SUMF ¶¶ 45-46).

Plaintiff did not report any of Mr. Dettmer's allegedly harassing comments and/or conduct before March 2013. (SUMF ¶¶ 47-49). Plaintiff did not report Mr. Dettmer's alleged comments and/or conduct sooner because she did not see a reason to do so; her union representative told her that she needed to include specific dates and times in a complaint; it did not occur to her to make a report sooner; she believed no would listen to her even though she had no reason for such a belief; she did not feel it was necessary; and/or she did not want to get involved in doing so. (SUMF ¶ 50).

After receiving Plaintiff's three (3) handwritten documents complaining about Mr. Dettmer's alleged workplace conduct, JGB investigated Plaintiff's allegations by interviewing four (4) witnesses, including Plaintiff and Mr. Dettmer. (SUMF ¶ 51). While interviewing Mr. Dettmer, Ms. Farber reminded him of JGB's policy that prohibits sexual harassment and that he must follow it. (SUMF ¶ 52).

On April 24, 2014, Ms. Farber issued a written memorandum to Plaintiff in response to her complaints about Mr. Dettmer, stating that JGB conducted a thorough

investigation and did not find any evidence that Plaintiff was treated in an inappropriate manner. (SUMF ¶ 53).

Plaintiff has not experienced any allegedly harassing conduct by Mr. Dettmer since March 2013. (SUMF ¶ 54). JGB has not received any further complaints of sex harassment or discriminatory conduct by Mr. Dettmer. (Id.). Plaintiff remains employed by JGB in the same position she has held since her employment commenced. (See SUMF ¶¶ 2, 3, 55). She has regularly received raises, including in December 2013 and December 2014, and has never been demoted or received a decrease in pay. (SUMF ¶¶ 3-4).

## LEGAL STANDARD UNDER FED. R. CIV. P. 56

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. See Fed. R. Civ. P. 56(c). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). The non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968); Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003). "'Summary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'" Lu v. Chase Inv. Serv. Corp., 412 Fed. App'x 413, 415 (2d Cir. Mar. 8, 2011) (quoting Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)). Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004). In that regard, "courts 'must . . . carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Fall v. New York State United

6

Teachers, 289 Fed.Appx. 419, 420 (2d Cir. 2008) (quoting Bickerstaff v. Vassar Coll., 196 F.3d

435, 448 (2d Cir. 1999)); Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d

Cir. 2003) ("'Purely conclusory allegations of discrimination, absent any concrete particulars,'

are insufficient" to satisfy employee's burden on a motion for summary judgment.) (quoting

Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

<div align="center">

**ARGUMENT**

**POINT I**

**PLAINTIFF'S SEX DISCRIMINATION CLAIM SHOULD
BE DISMISSED BECAUSE PLAINTIFF HAS ABANDONED
THE CLAIM AND SHE DID NOT SUFFER AN ADVERSE
ACTION BASED ON HER SEX.**

</div>

Absent direct evidence of discrimination, none of which is present here, Courts

within this Circuit utilize the burden-shifting framework established in McDonnell-Douglas

Corp. v. Green, 411 U.S. 792 (1973) to analyze gender discrimination claims under Title VII.

See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010).  Under this framework, a

Plaintiff first must establish a prima facie case of discrimination by showing that: (1) she is a

member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse

employment action; and (4) that action occurred under circumstances giving rise to an inference

of discriminatory intent. See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

With regard to the third prong of a prima facie case, an actionable adverse

employment action under Title VII is defined as a "materially adverse change in the terms and

conditions of employment," such as "termination of employment, a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation."

Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations and internal

<div align="center">

7

</div>

quotation marks omitted). Everyday workplace grievances, disappointments, and setbacks are not sufficient to constitute an adverse employment action. La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 211 (2d Cir. 2010).

In describing the fourth prong of a prima facie case, the Second Circuit has held "[i]t is axiomatic that mistreatment at work. . . is actionable under Title VII only when it occurs *because* of an employee's sex, or other protected characteristic." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for its actions. See Terry, 336 F.3d at 138 (citing McDonnell-Douglas Corp., 411 U.S. at 802). If the defendant employer articulates such a reason, the burden shifts back to the plaintiff "to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the instant case, Plaintiff concedes that even though she referenced it in her Complaint, she is not pursuing a claim for sex discrimination:

> Q      You're claiming in this lawsuit that you were discriminated against on the basis of your gender; is that correct?
> A      No, that's not correct.
> Q      So is your only claim in this lawsuit a claim for sexual harassment?
> A      At this point, at this point, yes.
> Q      So you're not making a claim for sex discrimination?
> A      Verbal, sexual harassment.

(Pl. Dep. 58-59).  Thus, Plaintiff's sex discrimination claim should be dismissed.

Even if Plaintiff attempts to change her testimony and asserts that she is pursuing a claim for sex discrimination, however, such claim necessarily fails because Plaintiff cannot establish the third and fourth prongs of a prima facie case of sex discrimination.  Importantly, Plaintiff does not allege that JGB took any cognizable adverse action against her.  It is undisputed that Plaintiff has remained employed by JGB in the same position she has held since her employment commenced.  (See SUMF ¶¶ 2, 55).  She regularly received raises and never suffered a demotion or pay decrease.  (SUMF ¶¶ 3-4).  Moreover Plaintiff has produced absolutely no evidence that she suffered an adverse action under circumstances giving rise to an inference of discrimination or that such action was taken because of her sex.  Thus, Plaintiff cannot establish a prima facie case of sex discrimination, and this claim should be dismissed.

Even if Plaintiff could establish that she suffered an adverse employment action based on her sex, however, JGB has articulated legitimate non-discriminatory reasons for each action taken with respect to Plaintiff.  Indeed, Defendant has issued various counseling and disciplinary notices to Plaintiff based on her deficient job performance including excessive absenteeism and tardiness and various failures to perform her duties during her employment.  (See SUMF ¶¶ 8-21).  See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000) (dissatisfaction with a plaintiff's job performance is a valid non-discriminatory reason for an adverse employment action).

Plaintiff will be unable to satisfy her ultimate burden of proof by demonstrating that JGB's legitimate, non-discriminatory reasons for its actions with respect to Plaintiff are a pretext for intentional sex discrimination.  The Second Circuit and this court repeatedly have held that an employer's business judgment in evaluating an employee's work performance

should not be second-guessed.  See Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 576 (S.D.N.Y. 2010) ("an employee's disagreement with her employer's evaluation of her performance is insufficient to establish discriminatory intent.") (quoting Ricks v. Condi Nast Publications, Inc., 6 F.App'x 74, 78 (2d Cir. 2001) (collecting cases)); Valentine v. Standard & Poor's, 50 F.Supp.2d 262, 284 (S.D.N.Y. 1999) ("plaintiff's subjective disagreement with his reviews is not a viable basis for a discrimination claim"); Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.").

Accordingly, the Court should dismiss Plaintiff's sex discrimination claim because she has abandoned the claim and because there no triable issues of fact as to whether she suffered an adverse employment action based on her sex or that JGB took any adverse action against her based on her sex.  Moreover, Plaintiff cannot satisfy her ultimate burden of proof by producing evidence that demonstrates JGB's legitimate, non-discriminatory reasons for its actions with respect to Plaintiff are a pretext for sex discrimination.

## POINT II

### PLAINTIFF'S CLAIM THAT SHE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT BASED ON HER SEX SHOULD BE DISMISSED AS A MATTER OF LAW.

**A.**     **Plaintiff's Hostile Work Environment Claim Is Time-Barred Because None of the Alleged Conduct Occurred Within the Limitations Period.**

Title VII's administrative exhaustion provision requires that any complaint be filed with the Equal Employment Opportunity Commission ("EEOC") or equivalent state agency within 300 days of the allegedly discriminatory act.  See 42 U.S.C. § 2000e-5(e)(1).  In analyzing hostile work environment claims, courts may consider behavior alleged to have occurred outside the statutory time period for the purposes of assessing liability "so long as an

act contributing to that hostile environment takes place within the statutory time period." National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 105, 118 (2002) ("In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."). Accordingly, if "any act falls within the statutory time period," the court needs "to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice." Id. at 120. "[A] sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010) (stating that courts must "make an individualized assessment of whether incidents and episodes are related."). Furthermore, for a hostile environment claim to survive, a plaintiff must show that at an act contributing to a hostile work environment occurred within the statute of limitations period, and that act must be "of sufficient severity to support a hostile work environment claim" on its own. See id at 79 (explaining that plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.")

Here, Plaintiff filed her EEOC Intake Questionnaire on June 5, 2013. (SUMF ¶ 32). Therefore, she must allege that a sufficiently severe act contributing to a hostile work environment occurred within 300 days of that date – i.e., on or after August 9, 2012. In the complaint she sent to Ms. Farber dated March 4, 2013, Plaintiff claimed that Mr. Dettmer began harassing her in 2005. (See Farber Decl., Ex. E (document dated March 4, 2013 complaining of conduct occurring within the last 8 years); Pl. Dep. 76-79). However, at her deposition, Plaintiff admitted that the majority of the specific instances of alleged harassment that she described in

her March 4, 2013 complaint were not related to her sex and, at most, were examples of "disrespectful," "unprofessional" or "inconsiderate" conduct. (SUMF ¶¶ 28-29). There are only a few allegations of comments or conduct by Mr. Dettmer that arguably relate to Plaintiff's sex, all of which are described in paragraphs 2 through 6 of Plaintiff's March 4, 2013 complaint. (See Farber Decl., Ex. E, ¶¶ 2-6). Plaintiff testified that each of these five incidents occurred between 2005 and 2011 – well outside the limitations that began on August 9, 2012. (SUMF ¶¶ 35-40). Moreover, none of the conduct described by Plaintiff in the document she sent to Ms. Farber dated March 5, 2013 was sex-based. (SUMF ¶¶ 30-31).

As such, none of the alleged acts that Plaintiff claims created a hostile work environment based on her sex occurred within the 300-day limitations period, as required under Title VII. Accordingly, the Court should find that Plaintiff's hostile work environment claim is time-barred because she has not alleged that any discriminatory act contributing to a hostile work environment occurred within the statute of limitations.

**B.   The Alleged Conduct About Which Plaintiff Complains Was Not Sufficiently Severe or Pervasive to Establish a Hostile Work Environment.**

To establish that she was subjected to a hostile work environment, a plaintiff must show: (1) that the harassing conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (internal citations and quotation marks omitted). The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001). This test has objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an

objectively hostile or abusive work environment," and the victim also must subjectively perceive that environment to be abusive.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  With respect to the pervasive requirement, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  Perry, 115 F.3d at 149 (citation and internal quotation marks omitted).  Further, as to the severity prong, isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness.  Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999); see also Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (noting that "we have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment").  In short, a plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d at 149).  In deciding whether the severe and pervasive threshold has been satisfied, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse.  Harris, 510 U.S. at 23 (relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance").  Finally, it is "axiomatic" that in order to establish a sex-based hostile work environment claim under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex.  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

In distinguishing between complaints that are not easily susceptible to dismissal as a matter of law and those that are, the Second Circuit has stated "[o]n one side lie complaints of sexual assaults; other physical contact, whether amorous or hostile, for which there is no

consent express or implied; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures" and "[o]n the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse and boorish workers." Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 177 (2d Cir. 2012) (internal citation and alterations omitted). It is well-settled that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (quoting Faragher, 524 U.S. at 788).

In the instant case, most of the conduct about which Plaintiff complains was not even remotely gender-based. Indeed, Plaintiff admits that the majority of the specific instances described in her March 4, 2013 letter are not related to her sex and, at most, were behaviors that were "disrespectful," "unprofessional" or "inconsiderate." (SUMF ¶¶ 28-29). Plaintiff also explicitly admits that none of the alleged incidents described in her March 5, 2013 complaint are related to her sex except for one paragraph and, with respect to that one other paragraph, the allegations on their face have nothing to do with Plaintiff's sex and, instead, concern Mr. Dettmer's scheduling of Program Aides' vacations. (SUMF ¶¶ 30-31). The Court should find that all but five paragraphs in Plaintiff's March 4, 2013 complaint and every paragraph in her March 5, 2013 complaint contain complaints that are gender-neutral and, therefore, do not support a claim of sexual harassment. These gender-neutral complaints concern Plaintiff's allegations that she was treated unfairly with regard to permission to depart early from work, bathroom use, vacation scheduling, disposal of food from a refrigerator, improper discipline, profanity directed at other individuals, and Plaintiff's classroom assignments. (See Farber Decl, Ex. E, F). Although facially neutral incidents may be considered in evaluating the totality of the circumstances in a hostile work environment claim, Plaintiff cannot establish there is a

circumstantial or other basis for inferring that these facially sex-neutral incidents were in fact discriminatory. See Cristofaro v. Lake Shore Cent. Sch. Dist.., 473 Fed. Appx. 28, 30 (2d Cir. 2012); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998) (cautioning that Title VII does not establish a "general civility code" for the American workplace).

The five comments alleged in paragraphs 2 through 6 of Plaintiff's March 4, 2013 complaint which are even arguably sex-related are isolated incidents and, at worst, amount to "vulgar banter, tinged with sexual innuendo." Redd, 678 F.3d at 177. Specifically, Plaintiff claims:

- She had changed clothes to attend a party on a boat and Mr. Dettmer made a comment saying let me find out you have another job. (Farber Decl., Ex. E, ¶ 2).

- She was picking up a bin and Mr. Dettmer asked if she was trying to show him her ass for points. (Id., ¶ 3).

- When she was getting soup one morning, Mr. Dettmer said that Easter likes a lot of juice on her sausage. (Id., ¶ 4).

- While giving out checks, Mr. Dettmer allegedly asked Plaintiff when she made her money; said that she probably works the whole weekend; asked how much money she makes per night and when was her best night; and noted that she had on her go-go boots. (Farber Decl., Ex. E, ¶ 5).

- When Mr. Dettmer saw Plaintiff wearing cowboy boots, he asked her what horse she was "gonna ride" today. (Id., ¶ 6).

Courts within this Circuit have found far more sexually-charged and inappropriate conduct does not satisfy the severe and pervasive requirement necessary to be actionable. For example, the Second Circuit recently held that, where, over a seven year period, an employee's supervisor "occasionally commented on [plaintiff's] physical appearance," "participated in a bet with three other male employees as to whether [the supervisor] would be able to engage

15

[plaintiff] in sexually explicit conversation," "once made a non-sexual sarcastic or derogatory remark to [plaintiff] in front of a colleague," "beckoned to [plaintiff] in the halls by yelling 'hey,' curling his finger in her direction," engaged the plaintiff "in conversation unrelated to work once a month for three-and-half years," "threw a piece of paper at [plaintiff] in a faculty meeting," "lied about [plaintiff] to a colleague," and "briefly made contact with the side of [plaintiff's] body," the "record [was] insufficient as a matter of law to permit a reasonable factfinder to identify a hostile work environment based on sex." Cristofaro, 473 Fed. App'x at 30 (noting that supervisor never touched plaintiff in a sexual or suggestive manner, and never asked her out or to engage in sexual acts with him and finding that "the record [indicated] only limited, infrequent, and at worst, mildly offensive conduct falling well short of the [requisite] severity and frequency"). See also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (affirming summary judgment where supervisor told plaintiff she had been voted the "sleekest ass" in the office and supervisor "deliberately touched [plaintiff's] breasts with some papers he was holding in his hand"; internal quotation marks omitted); Garone v. UPS, Inc., 436 F. Supp. 2d 448, 452-55, 469-71 (E.D.N.Y. 2006), aff'd sub nom. Sardina v. UPS, 254 Fed. Appx. 108, 109-110 (2d Cir. 2007) (plaintiff's allegations regarding: supervisor's occasional use of terms "office bitch," "brooklyn bimbettes," and "cat fight"; request for plaintiff's phone number; ignorance of plaintiff's assignments; co-worker's comment about going home to beat his wife; and co-worker's comment that plaintiff was "the kind of girl no one wants their son to bring home" were objectively insufficient to have altered the conditions of employment); Godineaux v. Laguardia Airport Marriott Hotel, 460 F. Supp. 2d 413, 422-23 (E.D.N.Y. 2006) (holding that defendant's sexual comment and gestures in front of plaintiff, defendant's promise that defendant would "give Plaintiff stock tips if Plaintiff would sleep with him," and defendant's attempt to

kiss plaintiff "did not rise to the level" of a hostile work environment); O'Dell v. Trans World Entm't Corp., 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (finding no hostile work environment where fellow store manager made comments about plaintiff's appearance, repeatedly asked her out on a date, sent her numerous emails professing his love for her, called her at home, and gave her gifts), aff'd, 40 Fed. Appx. 628 (2d Cir. 2002).

Viewing the record as a whole, no reasonable fact finder could conclude that Mr. Dettmer's alleged actions created a hostile work environment because his allegedly harassing interactions with Plaintiff were sporadic, not pervasive, and were not severe, abusive or threatening in any manner. Indeed, Plaintiff admits that Mr. Dettmer never physically threatened her, never asked her on a date, and never touched her in a sexual or suggestive way. (SUMF ¶ 26).

Accordingly, the Court should find that Mr. Dettmer's alleged interactions with Plaintiff do not constitute the type of conduct necessary to satisfy the hostile work environment standard and dismiss her claim.

C.   **Even If The Conduct About Which Plaintiff Complains Was Actionable, Plaintiff's Hostile Work Environment Claim Should Be Dismissed Because There Is No Basis To Impute Liability To Defendant.**

If no tangible employment action is taken as a result of a supervisor's harassment, or if any tangible employment action taken against the employee was totally separate and unrelated to the supervisor's discriminatory harassment, an employer may raise an affirmative defense to avoid liability on a hostile work environment claim. See Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998). To establish the defense, the employer must show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer or to avoid harm otherwise." Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41, 50 (2d Cir. 2012).

       With regard to the first element, although it is not dispositive, "the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has" exercised reasonable care to prevent and correct any discriminatory harassment. See Mack v. Otis Elevator Co., 326 F.3d 116, 128 (2d Cir. 2003). As to the second element, evidence of "*any* unreasonable failure [by the employee] to use *any* complaint procedure provided by the employer . . . will normally suffice to satisfy the employer's burden under the second element of the defense." Ellerth, 524 U.S. at 765 (emphasis added); see O'Dell v. Trans World Entm't Corp., 153 F. Supp. 2d 378, 390 (S.D.N.Y. 2001) ("Employees must be required to accept responsibility for alerting their employers to the possibility of harassment."), aff'd, 40 Fed. Appx. 628 (2d Cir. 2002). Although "[t]he defendant bears the ultimate burden of persuasion on this [second] element, . . . it may carry that burden by first introducing evidence that the plaintiff failed to avail herself of the defendant's complaint procedure and then relying on the absence or inadequacy of the plaintiff's justification for that failure." Ferraro v. Kellwood Co., 440 F.3d 96, 103 (2d Cir. 2006) (citing Leopold v. Baccarat, Inc., 239 F.3d 243, 246 (2d Cir. 2001)); see Leopold, 239 F.3d at 246 ("Once an employer has satisfied its initial burden of demonstrating that an employee has completely failed to avail herself of the complaint procedure, the burden of production shifts to the employee to come forward with one or more reasons why the employee did not make use of the procedures.").

       Here, is indisputable that Plaintiff did not experience any tangible employment action either as a result of Mr. Dettmer's alleged conduct or otherwise. Plaintiff remains employed by JGB in the same position she has held since her employment commenced with no

decrease in salary or demotion. (SUMF ¶¶ 2, 4, 55). Consequently, JGB may raise the Faragher-Ellerth affirmative defense to avoid liability. Furthermore, Defendant can satisfy both elements of the affirmative defense, and Plaintiff's hostile work environment claim should be dismissed.

JGB satisfies the first prong of the affirmative defense because it has maintained an anti-harassment policy with appropriate reporting procedures in its Employee Policy Manual at all times relevant hereto. (SUMF ¶ 44). Plaintiff received a copy of Defendant's Employee Policy Manual and signed an Acknowledgement and Agreement for it. (SUMF ¶¶ 41-42). It is undisputed that Plaintiff knew that she could and should report any alleged sex discrimination and/or sex harassment to Ms. Farber under the Grievance Procedure set forth in the policy in the manual. (SUMF ¶ 48). Moreover, once Ms. Farber receive Plaintiff's written complaints in or about April 2013, she and Mr. Dettmer's supervisor, Dr. Goldie Dersh, immediately investigated Plaintiff's allegations by interviewing all relevant witnesses, including Mr. Dettmer. (SUMF ¶ 51). By April 24, 2013, JGB concluded there was no evidence that Mr. Dettmer had engaged in inappropriate conduct and communicated its finding to Plaintiff. (SUMF ¶ 53). Nevertheless, Ms. Farber and Ms. Dersh reminded Mr. Dettmer of JGB's policy prohibiting sex harassment. (SUMF ¶ 52). Significantly, Plaintiff admits she has not experienced any alleged harassment by Mr. Dettmer since March 2013. (SUMF ¶ 54). JGB has not received any further complaints of sex harassment or discriminatory conduct by Mr. Dettmer. (SUMF ¶ 55). JGB's response to Plaintiff's complaints including its immediate investigation and report back to Plaintiff regarding the outcome of the investigation demonstrates that it took prompt action and was prepared to remedy any alleged problems reported by Plaintiff. Such response is "sufficient to remove any question of fact as to [JGB]'s liability." Wahlstrom v. Metro-North Commuter R. Co., 89 F.

Supp. 2d 506, 525 (S.D.N.Y. 2000) (fact that investigation began as soon as complaint was made and all witnesses were interviewed within days demonstrated employer took prompt action; concluding that "[b]y far the best evidence" that an employer's response was effective is that the plaintiff has not been sexually harassed since making a complaint, nor has the alleged harasser been accused of further harassment); see also Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999) (employer's good-faith efforts to resolve sexual harassment complaints demonstrates adequate anti-harassment policy). Therefore, JGB has satisfied the first prong of the affirmative defense.

As to the second prong, JGB easily can show that Plaintiff unreasonably failed to take advantage of JGB's avenues for complaints. It is undisputed that, although Plaintiff claims Mr. Dettmer harassed her for eight years, she did not report it to JGB's Vice President of Human Resources or any manager at JGB until 2013. (SUMF ¶ 49). Courts in this circuit have held that in similar cases, a delay in reporting harassment of as little as a year is sufficient, by itself, to demonstrate an unreasonable failure to take advantage of an employer's preventive and corrective opportunities. See O'Dell, 153 F. Supp. 2d at 391 (finding employer had met burden because employee waited almost a year to report harassment). During her deposition, Plaintiff repeatedly was asked why she delayed reporting Mr. Dettmer's alleged harassment. She variously claimed that: she did not see a reason to do so; her union representative told her that she needed specific dates and times in order to make a complaint; it did not occur to her; she believed no one would listen to her even though she had no reason for such a belief; she did not feel it was necessary; and/or she did not want to get involved in doing so. (SUMF ¶ 50). These reasons do not excuse or justify Plaintiff's lengthy delay. See O'Dell, 153 F. Supp. 2d at 391 (requiring plaintiff "to come forward with evidence that her failure to avail herself of [defendant's] remedial procedures

was caused by a credible fear that her complaint would not be taken seriously or that she would suffer an adverse employment action."). Thus, Defendant also satisfies the second prong necessary to avail itself of the affirmative defense, and Plaintiff has no evidence to refute the applicability of the affirmative defense.

Accordingly, even if the Court finds the conduct about which Plaintiff complains could constitute actionable sexual harassment, which Defendant denies, the Court should hold that JGB is entitled to the Faragher-Ellerth affirmative defense and dismiss Plaintiff's hostile work environment claim in its entirety.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and issue an Order dismissing Plaintiff's Complaint in its entirety, with prejudice, and granting such other relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

By:   */s/ Jennifer B. Courtian*
Jennifer B. Courtian
Ravindra K. Shaw

ATTORNEYS FOR DEFENDANT

Dated: February 13, 2015
New York, New York