UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/21/2015
```

---------------------------------------------------------------X

EASTER S. MCLEOD,              :

                                :

                 Plaintiff,   :

                                :         1:13-cv-6746-GHW

       -against-            :

                                :     MEMORANDUM OPINION

THE JEWISH GUILD FOR THE BLIND,  :     AND ORDER

                                :

                 Defendant.   :

---------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

      Plaintiff Easter S. McLeod, proceeding *pro se*, brought this action against her employer, LGI Services, LLC, f/k/a the Jewish Guild for the Blind ("JGB"), raising claims of sex discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.  JGB now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the following reasons, JGB's motion is granted and Ms. McLeod's claims are dismissed.

## I.    Background[1]

      JGB is a nonprofit healthcare organization that, among other things, runs a Day Treatment Program for individuals who are blind or visually impaired and have developmental disabilities.  Dkt.

---

[1] The following facts are derived from the evidence submitted in support of JGB's Local Civil Rule 56.1 Statement of Material Facts.  Despite being provided with the appropriate "Notice to Pro Se Litigant" under Local Civil Rule 56.2, *see* Dkt. No. 72, in opposition to JGB's motion, Ms. McLeod has submitted an unsworn and unsupported letter that does not respond to JGB's Rule 56.1 Statement in accordance with Local Civil Rule 56.1(b).  *See* Dkt. No. 75 ("McLeod Opp.").  JGB's Rule 56.1 Statement is thus deemed admitted to the extent that the statements therein are supported by the evidence in the record.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *Allen v. City of New York*, 480 F. Supp. 2d 689, 703 (S.D.N.Y. 2007) (noting that, if provided with the appropriate notice under Local Civil Rule 56.2, "*pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1."); *see also id.* ("The Court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement; it also must be satisfied that the moving party's assertions are supported by the record.").  The Court notes, however, that declining to deem JGB's Rule 56.1 Statement admitted would not change the outcome in this case.  Ms. McLeod's opposition letter consists almost entirely of allegations that are new, irrelevant, and unrelated to the allegations at issue in this case or to unlawful discrimination more generally.  As a result, while the Court is willing to overlook Ms. McLeod's failure to properly format and swear to the contents of her opposition letter in light of her *pro se* status, the statements in that letter simply do not specifically controvert any of the facts set forth in JGB's Rule 56.1 Statement.

No. 68 (Declaration of Donald Dettmer) ("Dettmer Decl.") at ¶ 2.  Ms. McLeod has been employed by JGB as a Program Aide in its Day Treatment Program since February 22, 2000.  Dkt. No. 70 (Declaration of Melissa Farber) ("Farber Decl.") at ¶ 4.

In or about April 2013, Ms. McLeod submitted three handwritten documents to Melissa Farber, JGB's Vice President of Human Resources, containing various complaints about the alleged conduct of Donald Dettmer, the Program Director of JGB's Day Treatment Program and Ms. McLeod's supervisor.  Farber Decl., Exs. E-G.  The vast majority of Ms. McLeod's complaints pertained to conduct that she considered "inconsiderate," "unprofessional," or "disrespectful," but that was entirely unrelated to her sex.  *See id.*; Dkt. No. 69, Exs. E-F (Ms. McLeod's Deposition Transcripts) ("McLeod Dep.") at 111, 115, 121, 127, 132, 142, 143-44, 151, 155, 161, 162, 165, 169, 172, 174, 177, 179, 184, 188, 192, 196-97, 199.

Ms. McLeod's complaints also contained a small number of allegations that could be construed as related to her sex.  In particular, Ms. McLeod alleged that (1) after she changed clothes to attend a party on a boat, Dettmer remarked, "let me find out [if] you have another job";[2] (2) while she was picking up a bin, Dettmer asked her, "[a]re you trying to show me your ass for points[?]"; (3) while she was picking up soup with sausage in it, Dettmer remarked that she "likes a lotta [sic] juice on her sausage"; (4) Dettmer once noted that she was wearing go-go boots, told her that she "probably work[s] the whole weekend," and asked her when she made her money, how much money she made per night, and when her best night was; and (5) when she was wearing cowboy boots, Dettmer asked her, "what horse you gonna [sic] ride today[?]"  Farber Decl., Ex. E at ¶¶ 2-6. Although Ms. McLeod did not identify the dates on which Dettmer allegedly made the above

---

[2] Although this comment does not appear to be related to Ms. McLeod's sex, Ms. McLeod states that it was made in a "suggestive manner" as if she was "a prostitute/whore."  Dkt. No. 2 (Compl.) at 16 (pdf numbering).

comments in her internal complaint, she testified that they were made at various points between 2005 and 2011.  McLeod Dep. at 71, 77-79, 81-82, 90-92, 100.

After receiving Ms. McLeod's internal complaint, JGB investigated her allegations by interviewing four witnesses, including Ms. McLeod and Dettmer.  Farber Decl. at ¶¶ 11-16.  By memorandum dated April 24, 2014, Farber informed Ms. McLeod that, following its investigation, JGB had found no evidence that Ms. McLeod was treated inappropriately.  Farber Decl., Ex. J.

On June 5, 2013, Ms. McLeod completed an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire in which she indicated that JGB had subjected her to "verbal, mental, [and] sexual harassment."  Dkt. No 67 (Declaration of Ravindra K. Shaw) ("Shaw Decl."), Ex. C at 22.  On June 26, 2013, the EEOC sent Ms. McLeod a right-to-sue letter stating that it had been "unable to conclude that the information obtained establishes violations of the statutes."  *Id.* at 8.

Ms. McLeod remains employed as a Program Aide at JGB, has regularly received raises, and has never been demoted or received a decrease in pay.  Farber Decl. at ¶ 4; McLeod Dep. at 42.

## II.     Procedural History

In September 2013, Ms. McLeod, proceeding *pro se*, filed the instant complaint raising claims of sex discrimination and sexual harassment under Title VII.[3]  *See* Dkt. No. 2.  Ms. McLeod's complaint is premised on the allegations set forth in the internal complaints that she submitted to Farber in April 2013.  *See id.* at 7-13 (pdf numbering) (attached internal complaints); McLeod Dep. at 200-01.

---

[3] In her complaint, Ms. McLeod also appeared to raise claims of retaliation and discrimination based on color, age, and disability.  The Court, however, dismissed those claims on JGB's motion for partial judgment on the pleadings.  *See* Dkt. No. 46.

JGB now moves for summary judgment. *See* Dkt. No. 66 ("JGB Mot."). JGB argues, *inter alia*, that Ms. McLeod cannot establish a disparate treatment sex discrimination claim because she did not suffer an adverse employment based on her sex. *Id.* at 9. JGB further argues that Ms. McLeod cannot establish that she was sexually harassed or subjected to a hostile work environment based on her sex because all of the alleged hostile conduct at issue occurred more than 300 days before she filed her EEOC charge, and because the alleged conduct about which she complains is not sufficiently severe or pervasive. *Id.* at 10-17.[4]

As noted, *see* n. 1, *supra*, in opposition to JGB's motion, Ms. McLeod has submitted an unsworn letter that is largely unresponsive to JGB's arguments and that does not specifically controvert the facts set forth in JGB's Rule 56.1 Statement of Material Facts. The small number of potentially relevant assertions in Ms. McLeod's opposition letter are addressed in the analysis below.[5]

---

[4] Additionally, JGB argues that (1) Ms. McLeod has abandoned her sex discrimination claim; (2) there was a legitimate, non-discriminatory reason for any adverse employment action taken against Ms. McLeod and she cannot establish that those reasons are pretextual; and (3) JGB can establish an affirmative defense to Ms. McLeod's sexual harassment claim under the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). *See* JGB Mot. at 8-10, 17-21. Because the Court agrees with the dispositive arguments described in the text above, it declines to resolve these additional arguments.

The Court nonetheless notes that, during her deposition, Ms. McLeod did appear to abandon her sex discrimination claim in the following exchange:

Q:  You're claiming in this lawsuit that you were discriminated against on the basis of your gender; is that correct?
A:  No, that's not correct.
Q:  So is your only claim in this lawsuit a claim for sexual harassment?
A:  At this point, . . . yes.
Q:  So you're not making a claim for sex discrimination?
A:  Verbal, sexual harassment.

McLeod Dep. at 58-59. In her opposition letter, however, Ms. McLeod denies abandoning her sex discrimination claim. *See* Dkt. No. 75 at 9. In light of this denial and of her *pro se* status, the Court will not deem her sex discrimination claim abandoned. *See Urena v. Beaudouin*, No. 09-cv-1107 (KAM), 2012 WL 1156411, at *6 (E.D.N.Y. Apr. 6, 2012) (declining to deem *pro se* plaintiff's claim abandoned through answers given during his deposition).

[5] After JGB filed a reply in support of its motion, *see* Dkt. No. 78, Ms. McLeod filed several letters that are almost entirely devoted to raising more recent workplace grievances unrelated to the grievances at issue in this lawsuit, *see* Dkt. Nos. 81-88. The Court has been unable to identify any actionable requests or relevant arguments in these letters, with one exception. Specifically, in a letter filed on August 14, 2015, Ms. McLeod appears to request leave to amend her complaint, though she does not clearly identify the nature of her proposed amendment. *See* Dkt. No. 88. This request is denied. This action has been pending since September 18, 2013, Ms. McLeod offers no explanation for her delay in making this request and does not sufficiently describe the nature of her proposed amendment, and JGB would be unduly prejudiced if the Court was to grant leave to amend after its summary judgment was fully briefed. *See Fershtadt v. Verizon*

## III.   Analysis

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "[c]onclusory allegations, conjecture, and speculation, . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must construe that party's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999).  Proceeding *pro se*, however, "does not . . . relieve [the opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, No. 00-cv-8594 (LAP), 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003).

### B.   Disparate Treatment Sex Discrimination Claims

In analyzing sex discrimination claims under Title VII, absent direct evidence of discrimination, courts apply the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d

---

*Commc'ns Inc.*, 262 F.R.D. 336, 338 (S.D.N.Y. 2009) (noting that, "[a]lthough mere delay alone does not provide a basis for denying the right to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice," and that "a trial court does not abuse its discretion by denying a motion to amend where the party seeking leave to amend fails to show a compelling reason for the delay" (internal quotation marks omitted)); *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 152 (2d Cir. 2012) ("The district court reasonably concluded that [the defendant] would have been prejudiced by permitting an amendment at that late point in the litigation, after completion of discovery and the filing and briefing of a motion for summary judgment.").

Cir. 2000).  Under this framework, in order to establish a *prima facie* case of discrimination, the plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).  If the plaintiff satisfies this burden, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the adverse employment action.  *Id.* at 492.  If the employer does so, the presumption of discrimination raised by the *prima facie* case is rebutted, and the burden returns to the plaintiff to show that the employer's stated reason for the adverse employment action is merely a pretext for discrimination.  *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

With respect to the third prong of the plaintiff's *prima facie* case, an adverse employment action is an action that gives rise to "a materially adverse change in the terms and conditions of employment."  *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).  "To be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* (internal quotation marks omitted).  Examples of materially adverse changes include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.* (internal quotation marks omitted).

Here, while it is undisputed that Ms. McLeod is a member of a protected class and is qualified for her position, the Court agrees with JGB that Ms. McLeod has not even alleged that JGB took any cognizable adverse employment action against her based on her sex.[6]  It is undisputed

---

[6] Although Ms. McLeod has not alleged that JGB reprimanded her based on her sex, JGB nonetheless reviews Ms. McLeod's disciplinary history and asserts that there was a legitimate, non-discriminatory reason for each of the various reprimands that she has received.  *See* Dkt. No. 71 (Rule 56.1 Statement) at ¶¶ 8-21; JGB Mot. at 9.  While

that Ms. McLeod remains employed as a Program Aide at JGB and has never been demoted or received a decrease in pay. Farber Decl. at ¶ 4. Ms. McLeod's claims in this case are premised entirely on a small number of sexually inappropriate or arguably sexually inappropriate comments allegedly made by her supervisor. *See* Farber Decl., Ex. E at ¶¶ 2-6; McLeod Dep. at 200-01. Ms. McLeod has not attempted to connect any of these comments to an adverse employment action, and, even liberally construing her allegations and arguments, there is no basis for the Court to make such a connection on its own. The absence of any allegations, much less evidence, indicating that Ms. McLeod suffered from an adverse employment action based on her sex is fatal to her sex discrimination claims, and thus JGB's summary judgment motion is granted with respect to those claims.

## C. Sexual Harassment/Hostile Work Environment Claims

Two forms of sexual harassment are recognized under Title VII: *quid pro quo* sexual harassment, which is not at issue here, and the creation of a hostile work environment based on sex. *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). A work environment is deemed hostile in violation of Title VII if it is "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's

---

commendable, the Court doubts whether employers are required to comb a *pro se* plaintiff's disciplinary history for potential adverse employment actions where, as here, the plaintiff has not alleged that any adverse employment action was taken against her based her membership in a protected class. *See, e.g., Caro v. Fid. Brokerage Servs.*, No. 3:14-cv-01028 (CSH), 2015 WL 1975463, at *9 (D. Conn. Apr. 30, 2015) (noting that district courts "need not engage in rank speculation[ ] to manufacture a federal claim for *pro se* plaintiffs" (internal quotation marks omitted)).

In any event, while Ms. McLeod appears to contend in her opposition letter that many of the reprimands at issue were unwarranted, *see* McLeod Opp. at 4-6, she does not attempt to connect any of them to discrimination based on her sex or to any incident related to her sex. As a result, even assuming, *arguendo*, that any of these reprimands could constitute an adverse employment action, *but see Uddin v. City of New York*, 427 F.Supp.2d 414, 429 (S.D.N.Y. 2006) ("[R]eprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." (internal quotation marks omitted)), Ms. McLeod cannot establish the fourth element of her *prima facie* case. The Court thus is not required to determine whether there was a legitimate reason for any potential adverse employment action taken against Ms. McLeod.

employment and create an abusive working environment." *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks omitted).

### 1.    Timeliness

Like all Title VII claims, hostile work environment claims must be filed with the EEOC within 300 days of the occurrence of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e)(1). In assessing the timeliness of a hostile work environment claim under this provision, the Court must consider "the entire scope" of the claim, "including behavior alleged outside the statutory time period, . . . so long as an act contributing to [the] hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) ("[A] sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related.").

Here, Ms. McLeod filed her EEOC Intake Questionnaire on June 5, 2013.[7] *See* Shaw Decl., Ex. C at 24. As a result, in order for her hostile work environment claim to be timely, at least one act contributing to that environment must have occurred within the 300-day period preceding that date, *i.e.*, on or after August 9, 2012. As indicated, Ms. McLeod has identified only five alleged comments made by Dettmer that are arguably related to her sex and thus that potentially contributed to the creation of a hostile work environment. *See* Farber Decl., Ex. E at ¶¶ 2-6; *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an

---

[7] Courts have held that the submission of an EEOC Intake Questionnaire "qualifies as a charge with the EEOC for timeliness purposes." *Acheampong v. New York City Health & Hospitals Corp.*, No. 11-cv-9205 (LTS), 2015 WL 1333242, at *7 (S.D.N.Y. Mar. 25, 2015).

employee's sex, or other protected characteristic.").[8]  Ms. McLeod testified, however, that each of these comments was made between 2005 and 2011, *see* McLeod Dep. at 71, 77-79, 81-82, 90-92, 100, which is outside of the limitations period that began on August 9, 2012.

In her opposition letter, Ms. McLeod suggests that she did not timely file an EEOC charge because she was afraid of losing her job.  *See* McLeod Opp. at 3.  Even liberally construing this assertion as an argument in support of equitably tolling the limitations period, it is unavailing.  *See Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 136 n.13 (E.D.N.Y. 2013) ("Fear of retaliation is not a basis for equitable tolling."); *Carter v. W. Publ'g Co.,* 225 F.3d 1258, 1266 (11th Cir. 2000) ("Plaintiffs' purported fear of retaliation, however, is not a ground for equitable tolling. Otherwise, the doctrine of equitable tolling would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation."); *see also Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) ("As a general matter, a litigant seeking equitable tolling must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." (internal quotation marks omitted)).  Accordingly, Ms. McLeod's hostile work environment claim is time-barred under Title VII's 300-day limitations period.

In any event, even if Ms. McLeod's hostile work environment claim was timely, it is subject to dismissal on the additional basis described below.

## 2.    Severity and Pervasiveness

As noted, to establish a hostile work environment claim under Title VII, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

---

[8] The Court acknowledges that "[f]acially neutral incidents" may be considered in assessing a hostile work environment claim where there is "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002).  In this case, however, there is no evidence in the record that would permit such an inference.  In other words, a reasonable juror could not conclude that the "facially neutral incidents" alleged by Ms. McLeod "were, in fact, based on sex."  *See id.*

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, ---F.3d---, 2015 WL 4604250, at *16 (2d Cir. Aug. 3, 2015) (internal quotation marks omitted).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* (internal quotation marks omitted).

With respect to pervasiveness, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation marks omitted).  Alternatively, the requisite threshold may be met by "very serious" isolated acts or an "extraordinarily severe" single incident that alters the conditions of the plaintiff's working environment. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  Ultimately, the Court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 2015 WL 4604250, at *16 (internal quotation marks omitted).  Finally, as already indicated, in order to contribute to the creation a hostile work environment in violation of Title VII, the conduct at issue must be carried out because of the plaintiff's membership in a protected class. *Brown*, 257 F.3d at 252.  Stated differently, the Court must "exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." *Alfano*, 294 F.3d at 377. "Otherwise, the federal courts will become a court of personnel appeals." *Id.*

To reiterate, excluding from consideration alleged conduct that is unrelated to her sex (and about which there is no basis for inferring any relation to her sex), Ms. McLeod's claims in this case are premised entirely on the following five comments allegedly made by Dettmer over a period of approximately six years: (1) after Ms. McLeod changed clothes to attend a party on a boat, Dettmer

allegedly remarked, "let me find out [if] you have another job"; (2) while Ms. McLeod was picking up soup containing sausage, Dettmer allegedly remarked that she "likes a lotta [sic] juice on her sausage"; (3) when Ms. McLeod was wearing cowboy boots, Dettmer allegedly asked her, "what horse you gonna [sic] ride today[?]"; (4) while Ms. McLeod was picking up a bin, Dettmer allegedly asked her, "[a]re you trying to show me your ass for points[?]"; and (5) Dettmer allegedly noted that Ms. McLeod was wearing go-go boots, told her that she "probably work[s] the whole weekend," and asked her when she made her money, how much money she made per night, and when her best night was.  *See* Farber Decl., Ex. E at ¶¶ 2-6.

As an initial matter, it is not at all clear to the Court that the first three of these comments are related to Ms. McLeod's sex.  Nonetheless, the Court will resolve any possible ambiguity on this point in Ms. McLeod's favor and assume that a reasonable juror could find that they are so related. The Court agrees with JGB, however, that a reasonable juror could not find that these comments were sufficiently severe or pervasive to establish a hostile work environment in violation of Title VII.  While the latter two of the above comments were clearly inappropriate, none of the five comments were physically threatening, and no reasonable person would consider these five comments made over a six-year period to be sufficiently frequent or severe to alter the conditions of Ms. McLeod's employment and create an abusive working environment.  *See Redd v. New York Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012) (indicating that hostile work environment claims premised on "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" are "easily susceptible to dismissal as a matter of law").  Accordingly, Ms. McLeod's sexual harassment/hostile work environment claims are subject to dismissal for this additional reason, and JGB's summary judgment motion is granted with respect to those claims.

## IV.   Conclusion

For the foregoing reasons, JGB's summary judgment motion is granted in its entirety and Ms. McLeod's claims are dismissed.  The Clerk of Court is instructed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:  August 21, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge